**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEITH LABAT** | **CIVIL ACTION** |
| **VERSUS** | **NO:       08-4041** |
| **DELISE WILLIAMS, WAYNE KENNEDY,** | **SECTION:  "N" (4)** |
| **MICHAEL HARRELL, J.P. MILLER,** | |
| **JEFFREY TRAVIS AND BRINK HILLMAN** | |

### <u>REPORT AND RECOMMENDATION</u>

Before the Court is a **Motion to Dismiss Claims (Rec. Doc. No. 16)** filed by the Defendants Assistant Warden J.P. Miller ("Miller"), Sergeant Master Wayne Kennedy ("Kennedy"), and Sergeant Brink Hillman ("Hillman"), seeking dismissal of the Plaintiff, Kenneth Labat's ("Labat") claims related to his inability to timely pursue parole and participation in a work-release program. The Defendants, Chief Jeffery Travis ("Travis"), Captain Michael Harrell ("Harrell"), Miller, Kennedy and Hillman, also filed a **Motion to Dismiss (Rec. Doc. No. 25),** seeking dismissal of Labat's claims that he was forced to do legal work as malicious and dismissal of his excessive force claims as prescribed.  These motions, along with the entire matter, were referred to the United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing, if necessary and submit Proposed Findings and Recommendations for disposition pursuant to **Title U. S.C. § 636(b)(B) and (C).**

# I.    **Factual Summary**

The Plaintiff, Keith Labat, is currently incarcerated in the David Wade Correctional Center ("DWCC") in Homer, Louisiana.[1]  He filed the above-captioned *pro se* and *in forma pauperis* Complaint pursuant to Title 42 U.S.C. § 1983, and under state law, against the Defendants, Delos Williams, Sergeant Master Wayne Kennedy, Captain Michael Harrell, Assistant Warden J.P. Miller, Chief Warden Jeffrey Travis, and Sergeant Brink Hillman, alleging violations of his Eighth Amendment rights and RICO as a result of the conditions of his confinement at the B.B. "Sixty" Rayburn Correctional Center ("RCC").

Labat alleges that, upon his arrival at RCC, he was assigned to a field crew as his job assignment.  He alleges that, despite properly performing his job, he was taken to disciplinary lock-down, known as the Sun Unit, for a fabricated "work offense."  He further alleges that while in the Sun Unit, he was beaten by Sergeant Hillman while he was restrained by handcuffs and leg shackles.

As a result, Labat claims that he sustained injuries including: two black eyes, inner ear damage, internal injuries, nerve damage to his left wrist and two fingers, bruised and/or fractured ribs, injured jaw bone, and multiple lacerations over his body.[2]  He further alleges that he was denied medical care in spite of his requests.  He also claims that he remained in the Sun Unit for 90 days under the direct supervision of Sergeant Hillman.

Labat claims that he reported the attack to Warden Travis, who assigned Captain Harrell to investigate the incident.  Labat further claims that when Harrell heard his story, he stopped the

---

[1]Rec. Doc. No. 1, Complaint, p. 3.  At the time of the events alleged herein, Labat was housed at B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana, in Washington Parish.

[2]Rec. Doc. No. 1, p. 4, ¶24.

interview in an effort to conceal Hillman's wrongdoing. He also allegedly refused to document or take pictures of his injuries.

After Labat reported the incident to the Louisiana Department of Corrections, two detectives from the Louisiana State Police and ranking DOC officials visited him at RCC. Thereafter, he was given medical treatment.

When he returned to the Sun Unit, Sergeant Hillman allegedly pushed him into the wall while he was handcuffed and shackled. The Sergeant allegedly told him that he was "a dead man for reporting the beating." Hillman also allegedly told him that the Louisiana State Police could not help him because they would be killed also.

Labat also claims that he was denied follow-up medical care and prescription medication ordered by the doctor because Hillman, Harrell, and Travis altered, manipulated, and forged the medical records.

Labat also alleges that, upon completion of his disciplinary sentence, he was transferred to the Wind Unit. Upon his arrival there, he was sent to the office of Defendants Kennedy and Williams. Allegedly, he was told by Williams and Kennedy that arrangements were being made to transfer him back to the Sun Unit so that "what was started on him could be finished." He was allowed to leave the office only to be summoned back 30 minutes later to see Kennedy and another inmate.

At that time, he alleges that Kennedy told him that, if he wanted to stay out of the Sun Unit, he would have to do legal work for "favorite" inmates and RCC and other state employees. These officers had reviewed his prisoner file and learned that he had practiced law in Louisiana for 15 years prior to his incarceration. Labat claims that he refused to comply and they threatened to send

him back to Sun Unit, where the worse beatings would continue. He also alleges that Kennedy and Williams also stole prison food and supplies, which they kept in their office, to give to "select inmates" to sell in the jail.

Labat claims that he was required to research and prepare pleadings for state and federal court related to the release of inmates convicted of violent crimes and other civil actions. He claims that he performed these tasks for seven months, six days a week, 10 hours per day. He claims that he was locked into offices with computers by Kennedy and Williams. These men would alter, manipulate, and forge DOC records and security logs, to reflect that Labat was released from his regular job assignments.

Labat further claims that, because he was using computer time in the library, other inmates were denied access to the area, which resulted in threats to him by other inmates. He claims that one inmate, Alfred Stewart, attacked him. He claims that Williams concealed the attack and denied him medical care so that no one would discover the illegal work he was performing.

Labat alleges that he endured this treatment until August 20, 2007, when he was sent back to Lafourche Parish for a post-conviction hearing. Upon his return to RCC, he reported the events to Assistant Warden Miller. He and Miller met with an RCC computer specialist who located Labat's computer files in the prison's computer systems.

On August 23, 2007, Travis had Labat placed in the maximum security/isolation area for his protection. However, he was once again under the supervision of Hillman, who continued his threats and denied him medical attention. He remained there for over seven weeks, under the conditions and restrictions normally reserved for troublesome inmates. As a result, he was denied

regular showers, communication with his family, recreation time, and access to legal materials and hygiene items.

Labat claims that he was interviewed by Miller and Harrell, whom he claims coerced and harassed the inmate witnesses. On the recommendation of Miller and Harrell, Warden Travis had Labat transferred to David Wade Correctional Center ("DWCC"). Upon his arrival there, he was placed in maximum security because of his last location in RCC. He claims that it took three weeks before RCC informed DWCC that he was not a security risk.

Labat complains that his transfer to DWCC cost him the opportunity to interview with the Louisiana Risk Review Panel for early release in December of 2007. He also lost the opportunity at RCC to continue with self-help programs and vo-tech training at Louisiana's state technical college. He further complains that he was scheduled to appear before the Louisiana Parole Board on November 25, 2008, and his failure to complete courses at RCC impeded his chances for parole. He further alleges that his parole eligibility was impacted by his placement in security confinement. He also claims that he lost the opportunity to be screened for work-release programs at RCC which he intended to pursue in March of 2008.

Labat claims that Defendants Williams, Kennedy, and Hillman acted willfully and maliciously to subject him to cruel and unusual punishment, committed theft of state assets, caused mental and physical abuse by themselves and other inmates, and forged state documents. He claims that Defendants Harrell, Miller, and Travis caused him to be placed in isolation under cruel and unusual conditions and transferred him to DWCC which resulted in his prolonged incarceration, lost opportunity for parole, and lost opportunity to participate in work release and vo-tech training. He further claims that the prison officials violated the Racketeer Influenced and Corrupt Organization

Act, 18 U.S.C.A. § 1961 ("RICO"), because they engaged in a pattern of criminal activity on a constant and frequent basis. As a result of the foregoing actions and events, Labat seeks relief under § 1983 from each of the Defendants for past, present, and future psychological, physical, emotional, and economic damages, attorneys fees, costs, and general and equitable relief. He also seeks to recover punitive damages for the violation of his civil rights.

## II.    Defendants' Motions to Dismiss

Defendants Miller, Hillman, and Kennedy, filed a Motion to Dismiss (Rec. Doc. No. 16) seeking dismissal of Labat's *in forma pauperis* Complaint pursuant to 28 U.S.C. §1915(e)(2)(B). The Defendants argue that Labat has failed to state a cognizable claim under § 1983, because he does not have a protected constitutional right to placement in a particular prison. They also argue that he has no constitutional right to early release through parole.

Labat filed an opposition to the motion, alleging that his references to lost opportunities for parole and work-release were elements of his damage claims, not individual claims against the defendants.

In addition, Defendants Travis, Harrell, Miller, Kennedy, and Hillman, filed a Motion to Dismiss (Rec. Doc. No. 25) seeking dismissal of Labat's claims as malicious and frivolous pursuant to 28 U.S.C. § 1915 and § 1915A. In this motion, the Defendants assert that Labat's excessive force claim has prescribed and that the remainder of his claims are duplicative of claims raised in a pending civil rights suit brought in the United States District Court for the Middle District of Louisiana. Labat has not filed an opposition to this motion.[3]

---

[3]Labat has moved the Court for an extension of time to file an untimely opposition to the motion. (Rec. Doc. No. 30.) However, for the following reasons, there is no need for the Court to receive further pleadings on the motion. The motion was denied by separate order of the Court.

## III.    Lack of Legal Authority for Defendants' Motions

Although captioned as "Motions to Dismiss," the Defendants specifically seek dismissal of Labat's claims pursuant to Title 28 U.S.C. §1915(e)(2)(B)[4] and Title 28 U.S.C. § 1915A.[5]  The first motion, Rec. Doc. No. 16, styled as a Motion to Dismiss, seeks dismissal for failure to state a claim with the legal basis of the dismissal being set forth as §1915(e)(2)(B).[6]  Similarly, the second motion, Rec. Doc. No. 25, captioned as Motion to Dismiss, cites its sole legal basis for dismissal as "malicious and frivolous pursuant to 28 U.S.C. §§1915 and 1915A."[7]

The referenced statutory provisions by their very terms authorize <u>the Court</u> to *sua sponte* dismiss a case filed by a prisoner proceeding *in forma pauperis* upon a determination that the case is frivolous or malicious, the case fails to state a claim for which relief can be granted, or the case seeks monetary relief against an immune defendant.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268,

---

[4]28 U.S.C. § 1915(e)(2) provides in relevant part as follows:
Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that – . . .
(B) the action or appeal–
(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

[5]28 U.S.C. § 1915A provides in relevant part as follows:
a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.  . . .

[6]*See* Rec. Doc. No. 16-2, pp.1.

[7]Rec. Doc. No. 25, pp. 1, 2, 3; Rec. Doc. No. 25-2, p. 7.

269 (5th Cir. 1992).  Neither of these provisions provide a basis for counsel to urge a motion to dismiss.

In other words, counsel for the Defendants have urged motions before this Court under statutory provisions which do not provide authority for the filing of such motions.  Sections 1915 and 1915A are clearly and exclusively directives to the Court for *sua sponte* action upon the Court's preliminary review of *in forma pauperis* cases.  *See Fiorentino v. Biershbach*, 64 Fed. Appx. 550, 553 (7th Cir. 2003) (district courts are to employ §1915A's screening mechanism to all *in forma pauperis* prisoner suits); *Onapolis v. Lamanna*, 70 F. Supp.2d 809 (N.D. Ohio 1999) (same).

This Court is required to and does, as a routine matter, screen the cases at the time of filing pursuant to these statutory directives.  Upon finding that a petition or claim should be so dismissed, the Court will issue the appropriate report or partial report and recommendation.  When *sua sponte* dismissal is not warranted, as here, there is no report to issue.  Having found during the prior screening of this case that Labat's petition on its face is not frivolous, malicious, and does not fail to state a claim for which relief can be granted, the Court has allowed the case to proceed and anticipates scheduling a preliminary conference as soon as it can resolve the motions filed by counsel for the defendants.

By its very language, a motion to dismiss, if based on the failure to state a claim, may be urged <u>by counsel</u> under Fed.R.Civ.P. 12(b)(6).  The Court may also consider, upon motion of the parties, the frivolousness, maliciousness, or failure to state a claim of a petition challenging prison conditions pursuant to Title 42 U.S.C. § 1997e.  Neither of these statutory provisions were relied upon or mentioned at all in the pending motions.

The lack of legal authority is basis enough to deny the Defendants' motions, and counsel for the State is owed no explanation for the Court's findings that the Complaint is not frivolous. However, for the benefit of a reviewing Court, and to avoid the possibility of any unnecessary motions being filed by counsel pursuant to Rule 12(b)(6) or § 1997e, the Court will comment on the following facets of the Defendants' motions and Labat's claims.

## IV.   <u>Discussion</u>

### A.   <u>Construction of Labat's Pleadings</u>

The Defendants urge that Labat's Complaint must be strictly construed, because he was a licensed attorney for 15 years prior to his incarceration. It seems counsel would have the Court screen Labat's pleadings as those of a prisoner under § 1915A and § 1997A, while at the same time requiring Labat to perform as a practicing attorney without the benefit of the liberal construction normally afforded a *pro se* prisoner. Nevertheless, the Court is not persuaded by this argument.

It is a long standing premise that the Court must construe *pro se* pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Howard v. King*, 707 F.2d 215 (5th Cir. 1983). However, as in the case cited by the Defendants, some courts have held that a court need not afford a practicing licensed attorney such leniency when the attorney appears *pro se*. *See Hamlett v. Gonzales*, No. 303CV-2202, 2005 WL 1500819 at *19 n.18 (citing *Harbulak v. Suffolk Co.*, 654 F.2d 194, 198 (2d Cir. 1981) (holding that the plaintiff "is a practicing attorney and, therefore, cannot claim the special consideration which courts customarily grant to pro se parties"); *Tindal v. Gibbons*, 156 F. Supp.2d 1292, 1294 n.1 (M.D. Fla. 2001) ("Although the Court generally construes the pleadings of a pro se litigant liberally, because Plaintiff is a practicing attorney, the Court is not

required to show him special leniency."); *Define v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y. 1997) ("Plaintiff, proceeding *pro se*, is an attorney, and the court has a right to expect skillfully drawn pleadings from her.")).

There is no mandate, however, that the courtesy cannot be extended to an attorney. Each of the cases above recognize the Court's discretion to allow, or disallow, the liberal consideration by such phrases as "need not" and "not required." Each of the cited cases address *pro se* filings by attorneys who were licensed and practicing at the time they were representing themselves. By contrast, some courts have held that a non-practicing attorney need not be distinguished from *pro se* plaintiffs in general and may be entitled to liberal construction under certain circumstances. *See Smith v. New York Presbyterian Hosp.*, 254 Fed. Appx. 68, *70 (2d Cir. Nov. 15, 2007) (plaintiff had not practiced in years partly due to psychiatric issues forming basis of her suit).

Labat is no longer licensed to practice law and is now, and has been, in prison. This is not the normal circumstance addressed in the cases cited above, where pleading construction was held to be strict. Thus, in the instant case, the Court is called to balance the liberal construction rule related to *pro se* prisoners with the exception held out for attorneys.

The Fifth Circuit has long recognized that the Court must be sensitive to the possible abuses in the prison setting which can impact a prisoner's ability to develop his case. *Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Under the circumstances of this case, and under the restrictions on Labat's resources as a result of his incarceration, the Court is inclined to afford him the same construction given any other *pro se* prisoner. Nevertheless, for the following reasons, Labat's detailed pleadings and arguments do not

require any greater or more liberal construction to survive the Court's statutory review under § 1915, § 1915A, or § 1997e.

### B.    Standards of Review for Initial Screening by the Court

Title 28 U.S.C. § 1915(e) and § 1915A, and with specific reference to prison conditions, Title 42 U.S.C. § 1997e(c), require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

### C.    Labat's Allegations Regarding Parole Revocation and Transfer

Labat claims that, as a result of his transfer from RCC to DWCC, he lost his opportunity to attend a parole revocation hearing and lost the benefit of credits earned toward participation in work-release and educational programs at RCC.  The Defendants seek dismissal of these claims, because Labat has no constitutionally protected right to be in a particular prison and has no right to early release.

Labat asserts in his opposition that he is not complaining about or challenging the transfer in particular nor alleging that he was denied parole.  He argues, instead, that these allegations were raised as elements of the collateral damages which resulted from the unconstitutional and criminal actions of the named Defendants.  He claims that, but for these wrongful actions, he would not have been sent to RCC, left in disciplinary lock-down, missed his parole hearing, and been moved away from the technical classes he was attending while at DWCC.

In other words, Labat concedes that he is not raising claims of a constitutional violation as a result of his transfer per se.  Instead, he claims that the transfer, and consequent losses of opportunity, were additional links in the damage caused by the Defendants' alleged unconstitutional behavior and a result of the continued efforts to cover-up the wrongs done after his complaints became known to prison and DOC officials.

The due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement, even if the environment of one prison may be "much more disagreeable" to the prisoner than another.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function.  *See Olim v.*

*Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

La. Rev. Stat. Ann. § 15:824, authorizes the Director of Corrections to decide to which penal institution an inmate should be delivered or transferred.[8]  The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners.  *See Santos v. La. Dept. of Corr. Secretary*, No Civ. A. 95-4215, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).  The State of Louisiana by its broad discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another.  *Santos*, 1996 WL 89260, at *4.

---

[8]La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.
B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department.  .  .  .

Furthermore, there is no constitutional right to early release, and the denial of early release is within the discretion of the body charged with making that decision. *Valenzuela v. Morris*, 245 Fed. Appx. 397, 398 (5th Cir. Aug. 21, 2007); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) ("A convicted prisoner does not have a constitutional right to be released before the expiration of a valid sentence."). Thus, it is true that Labat would have no protected right to expect early release from his sentence. He also has no right to participate in work-release or any particular work at the prison. *See Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50, n.3 (5th Cir. 1995).

However, the Fifth Circuit also has held that "[o]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Under *Woods*, when adverse actions, like the transfer in this case, are motivated by retaliation for pursuing rights, including those under the prison grievance process, it does not matter that such actions are not actionable in and of themselves.

Thus, on its face, Labat's claim is not frivolous simply because he mentions "transfer" and "parole" in his underlying facts and in his description of damage. Rather, he has alleged that the transfer was an ongoing part of the problems at RCC and the officials' efforts to cover them up and, as a result, he suffered collateral impact on his parole and other work/educational pursuits. This suggestion of improper motive for the transfer is sufficient to allow Labat to proceed with his claims beyond initial screening.

### D. Excessive Force Claims and Prescription

One part of Labat's claim is that he was the victim of excessive force by Sergeant Hillman when he was first moved to the Sun Unit. Labat does not provide a specific date in his petition. As

noted by the Defendants, Labat mentioned that he filed a grievance in connection with the alleged excessive force.[9]  He also claims that the beating was not investigated and he did not receive an answer in response to that grievance.[10]  The Defendants argue, nevertheless, that this claim has prescribed and should be dismissed as frivolous.

Specifically, the Defendants allege that a review of the related administrative grievance records would demonstrate that this incident occurred well over one year prior to the filing or submission of this Complaint.  The Defendants provide the Court with copies of prison grievance records which they argue will demonstrate that Labat waited more than one year from the completion of the grievance process to file this suit.

Where it appears from the face of the Complaint that the applicable limitations period has run, an action is subject to dismissal for failure to state a claim upon which relief may be granted.  *Cf. Songbyrd, Inc.* v. *Bearsville Records, Inc.*, 104 F.3d 773, 776 n.3 (5th Cir. 1997).  Considering the foregoing, there is nothing in the Complaint which would lead this Court to believe, on an initial screening, that the excessive force claim is prescribed.

Because there is no federal statute of limitations for § 1983 claims, the district court looks to forum state's statute of limitations for personal injury claims.  *Bd. of Regents of Univ. of New York v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)).  In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which

---

[9]Rec. Doc. No. 1, p. 33, ¶227.

[10]Rec. Doc. No. 1, p. 33, ¶228, 229.

provides for a prescriptive period of one year from the date of injury or damage.[11]  *See Jacobsen*, 133 F.3d at 319 (citing  *Elzy v. Roberson*,  868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action.  *Jacobsen*, at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).  That prescriptive period is tolled during the grievance process.  *See* La. Rev. Stat. Ann. § 15:1172(E).

The record in this case reflects that Labat's Complaint was filed by the Clerk of Court on July 30, 2008, when pauper status was granted.  In the *pro se* prisoner context, however, the date when prison officials receive the complaint for delivery to the court is considered the time of filing for limitations purposes.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (*pro se* prisoner's objection to a report and recommendation deemed filed when given to prison officials for mailing).  In this case, Labat submitted his handwritten federal Complaint with an affidavit dated June 18, 2008.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

The Defendants rely upon the prison grievance records to suggest that Labat received a copy of the answer to his grievance on June 8, 2007.  This was more than one year before he filed this federal Complaint and would tend to show that Labat's petition is not timely.

However, this Court conducts its initial screening pursuant to § 1915 and § 1915A.  Under an initial frivolousness review, the Court is limited to the Complaint.  As noted above, accepting

---

[11]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year.  This prescription commences to run from the day injury or damage is sustained.  It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

Labat's pleadings as true, he filed a grievance about the excessive force for which he never received a response. On its face, Labat's Complaint does not clearly establish that his claim is prescribed.

The Defendants, however, would have the Court look to pleadings outside of the Complaint to discredit the allegations in the Complaint and to establish dates applicable to events in the petition. Labat alleges that many prison records were falsified in connection with his grievance in order to facilitate the cover-up. The Court would have to make credibility calls and evaluate the additional pleadings to resolve these conflicts.

However, these outside records are not appropriate for the Court's review under § 1915 and § 1915A. Had the motion been submitted under Rule 12(b)(6), perhaps the Court could have considered the attachments by construing the motion as one seeking summary judgment, after giving due notice to Labat. However, the Defendants have not filed a Rule 12(b)(6) motion, and this Court is without authority to consider matters outside of the Complaint on its initial screening. Labat's petition survives initial screening on the issue of prescription.

### E.      The Remaining Claims and Maliciousness

The defendants contend that this lawsuit arises out of the same series of events and alleges "many" of the same facts against different Defendants as Civ. Action No. 08-377, filed previously on June 5, 2008, in the United States District Court for the Middle District Louisiana. Specifically, the Defendants allege that the cases are similar, because they both allege that guards at RCC participated in forcing him to perform legal work. The defendants further contend that, because the captioned lawsuit, Civil Action No. 08-4041, was not submitted until June 18, 2008, it should be

dismissed as malicious or duplicative of the prior filed case, Civ. Action No. 08-377, a copy of which was attached to the motion.[12]

The suit currently pending in the Middle District names as Defendants Calvin Jody Peterson and Dianne Peterson (collectively, "the Petersons"), both residents of Mississippi, who are employees of the Louisiana Community and Technical College System ("LCTCS"), which is also a named defendant. This is the same entity with whom Labat was enrolled while housed at RCC. Labat alleges in that suit that the Petersons were involved in litigation concerning immovable property rights, land option rights, rental agreements, landlord-tenant issue, fuel contracts, personal injuries, breach of contracts, corporate matters, and tax issues. He further claims that as a result, these Defendants caused him to be assigned to do their legal work while he was incarcerated at RCC.

Labat alleges that the RCC guards demanded that he prepare all of the legal pleadings and provide what ever legal services the Petersons needed. As a result of these facts, Labat filed suit against the Petersons, alleging that they violated his constitutional rights by coercing him to perform legal services, all of which were also in violation of state law and which resulted in his inability to continue his training through LCTCS, the co-defendant.

After a thorough reading of both Complaints, the Court is not persuaded that the instant lawsuit is malicious. An *in forma pauperis* complaint is subject to dismissal as malicious when it is duplicative of a prior lawsuit and, by filing it, the plaintiff "seeks to avoid the ordinary rules of *res judicata*." *Pittman v. Moore*, 980 F.2d 994, 994 (5th Cir. 1993) (citing *Wilson v. Lynaugh*, 878

---

[12]The Court again notes that this is outside of the complaint for purposes of its initial screening and would not normally be appropriate for review under § 1915 or § 1915A. However, the Court can and will take notice of the matter filed in the Middle District.

F.2d 846, 849-850 (5th Cir. 1989)).  The doctrine of *res judicata* will bar an action under the following circumstances: (1) the parties must be identical in both suits; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action must be involved in both cases.  *Wilson*, 878 F.2d at 850 n.10 (citing *Miller v. U.S.P.S.*, 825 F.2d 62, 64 (5th Cir. 1987).

Relying on these standards in *Pittman*, the Fifth Circuit held that it is malicious for a pauper plaintiff to file a lawsuit that duplicates another pending federal lawsuit by the same plaintiff, even though the other litigation has not gone to judgment.  *Pittman*, 980 F.2d at 995.  The Court also recognized that, while dismissal without prejudice may be warranted, consolidation is also an option. *Id*.  In this case, the Defendants would have the Court dismiss Labat's Complaint.

As an initial matter, it is misleading for defense counsel to suggest that Labat filed a petition in the Middle District of Louisiana on June 5, 2008.  The record reflects that Labat filed a Petition for Damages in the 19th Judicial District Court for East Baton Rouge Parish, on May 20, 2008.  The matter was <u>removed</u> to federal court by the Louisiana Community and Technical College System, which is also represented by the Louisiana Attorney General, Louisiana Department of Justice.

Next, a review of the instant Complaint compared to the one pending in the Middle District, reflects that the cases do not have any common defendants.  Thus, under the most basic factors of maliciousness, the parties are not identical or common at all.

Be that as it may, the Middle District is certainly competent to consider the merits of the instant lawsuit, and there are some common statements of fact in both petitions which may have been joined in a common suit.  However, the cases do not necessarily involve the same causes of action.  Labat's earlier petition contains no statement of jurisdiction but seeks damages for the

intentional and negligent actions of the Defendants named therein under state law, which he asserts in his prayer also violated his "civil rights."[13]

The instant action sets forth specific federal causes of action pursuant to 42 U.S.C. § 1983 and RICO, directed at criminal activity under 18 U.S.C. § 4. It also invokes the supplemental jurisdiction of the Court over non-specific negligent and intentional state law violations, including malfeasance in office, by the defendants named therein.

Based on the foregoing, the instant Complaint is not duplicative of the suit pending in the Middle District; the two suits involve different Defendants and seek liability under different legal theories. Thus, judgment in one case would not be preclusive of the issues raised in the other. The instant case is not malicious.

For all of the foregoing reasons, Labat's Complaint is sufficient to survive dismissal under the Court's initial screening under § 1915, § 1915A, and § 1997e. The defendants' Motions to Dismiss seeking dismissal under § 1915 and § 1915A should be denied.

## V.    Recommendation

It is therefore **RECOMMENDED** that the Defendants' **Motion to Dismiss Claims (Rec. Doc. No. 16)** and the Defendants' **Motion to Dismiss (Rec. Doc. No. 25)** be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[13]Rec. Doc. No. 25-3, p. 8, ¶43.

a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 4th day of June, 2009.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE