**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KEITH LABAT**                                    **CIVIL ACTION**

**VERSUS**                                         **NO.  08-4041**

**DELISE WILLIAMS, WAYNE KENNEDY,**                **SECTION "N"(4)**
**MICHAEL HARRELL, J.P. MILLER,**
**JEFFREY TRAVIS AND BRINK HILLMAN**

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss and for Summary Judgment (Rec. Doc. No. 42)** filed by the defendants, Sergeant Brink Hillman, Major Michael Harrell, Assistant Warden J.P. Miller, Lieutenant Delos Williams, CSM Wayne Kennedy, and Chief Jeffery Travis seeking dismissal of plaintiffs' claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and otherwise because they are entitled to judgment as a matter law pursuant to Fed. R. Civ. P. 56.  The plaintiff, Keith Labat, has filed an Memorandum in Opposition (Rec. Doc. No. 43).  Upon review of the entire record, the Court has determined that the motion can be disposed of without an evidentiary hearing.

## I.     Factual and Procedural Background

The plaintiff, Keith Labat ("Labat"), was incarcerated in the David Wade Correctional Center ("DWCC") in Homer, Louisiana at the time of the filing of this complaint.[1]  However, at the

---

[1]Labat has since been released from custody.  Rec. Doc. Nos. 44, 45.

time of the events forming the basis of this action, Labat was housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") (f/k/a Washington Correctional Institute) in Angie, Louisiana.

Labat filed the above captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983, and under state law, against the defendants, Sergeant Brink Hillman, Major Michael Harrell, Assistant Warden J.P. Miller, Lieutenant Delos Williams, CSM Wayne Kennedy, and Chief Jeffery Travis, alleging violations of his Eighth Amendment rights, RICO, and state law, as a result of the conditions of his confinement at the RCC.

The plaintiff alleges that, upon his arrival at RCC, he was assigned to a field crew as his job assignment. He alleges that, despite properly performing his job, he was taken to disciplinary lock-down, known as the Sun Unit, for a fabricated "work offense." He further alleges that while in the Sun Unit, he was beaten by Sergeant Hillman while he was restrained in handcuffs and leg shackles.

As a result, Labat claims that he sustained injuries including two black eyes, inner-ear damage, internal injuries, nerve damage to his left wrist and two fingers, bruised and/or fractured ribs, an injured jaw bone, and multiple lacerations over his body.[2] He further alleges that he was denied medical care in spite of his requests. He also claims that he remained in the Sun Unit for 90 days under the direct supervision of Sergeant Hillman.

Labat claims that he reported the attack to Warden Travis, who assigned Captain Harrell to investigate the incident. Labat further claims that when Harrell heard his story, he stopped the interview in an effort to conceal the wrongs done by Hillman. He also allegedly refused to document or take pictures of his injuries.

---

[2]Rec. Doc. No. 1, p. 4, ¶24.

After Labat reported the incident to the Louisiana Department of Corrections ("DOC"), two detectives from the Louisiana State Police and ranking DOC officials visited him at RCC. Thereafter, he was given medical treatment, after which he was returned to the Sun Unit.

Upon his return, Sergeant Hillman allegedly pushed him into the wall while he was handcuffed and shackled. The Sergeant allegedly told him that he was "a dead man for reporting the beating." Hillman also allegedly told him that the Louisiana State Police could not help him because they would be killed also.

Labat also claims that he was denied follow-up medical care and prescription medication ordered by the doctor because Hillman, Harrell, and Travis altered, manipulated and forged the medical records.

Labat also alleges that, upon completion of his disciplinary sentence, he was transferred to the Wind Unit. Upon his arrival there, he was sent to the office of the defendants Kennedy and Williams. He was allegedly told by Williams and Kennedy that arrangements were being made to transfer him back to the Sun Unit so that "what was started on him could be finished." He was allowed to leave the office only to be summoned back 30 minutes later to see Kennedy and another inmate.

At that time, he alleges that Kennedy told him that, if he wanted to stay out of the Sun Unit, he would have to do legal work for "favorite" inmates, RCC employees, and other state employees. These officers had reviewed his prisoner file and learned that he had practiced law in Louisiana for 15 years prior to his incarceration. Labat claims that he refused to comply and they threatened to send him back to Sun Unit, where the beatings would continue. He also alleges that Kennedy and

Williams also stole prison food and supplies, which they kept in their office, to give to "select inmates" to sell in the jail.

Labat claims that he was required to research and prepare state and federal pleadings related to the release of inmates convicted of violent crimes and other civil actions. He claims that he performed these tasks for seven months, six days a week, 10 hours per day. He claims that he was locked into offices with computers by Kennedy and Williams. These men would alter, manipulate, and forge DOC records and security logs, to reflect that Labat was released from his regular job assignments.

Labat further claims that, because he was using computer time in the library, other inmates were denied access to the area, which resulted in threats to him by other inmates. He claims that one inmate, Alfred Stewart, attacked him because he spent too much time in the library. He claims that Williams concealed the attack and denied him medical care so that no one would discover the illegal work he was performing.

Labat alleges that he endured this treatment until August 20, 2007, when he was sent back to Lafourche Parish for a post-conviction hearing. Upon his return to RCC, he reported the events to Assistant Warden Miller. He and Miller met with an RCC computer specialist who located Labat's computer files in the prison's computer systems.

On August 23, 2007, Travis had Labat placed in the maximum security/isolation area for his protection. However, he was once again under the supervision of Hillman, who continued his threats and denied him medical attention. He remained there for over seven weeks, under the conditions and restrictions normally reserved for troublesome inmates. As a result he was denied

regular showers, communication with his family, recreation time, and access to legal materials and hygiene items.

Labat claims that he was interviewed by Miller and Harrell, whom he claims coerced and harassed the inmate-witnesses. On the recommendation of Miller and Harrell, Warden Travis had Labat transferred to DWCC. Upon his arrival there, he was placed in maximum security because of his last location in RCC. He claims that it took three weeks before RCC informed DWCC that he was not a security risk.

Labat complains that his transfer to DWCC cost him the opportunity to interview with the Louisiana Risk Review Panel for early release in December of 2007. He also lost the opportunity at RCC to continue with self-help programs and vo-tech training at Louisiana's state technical college. He further complains that he was scheduled to appear before the Louisiana Parole Board on November 25, 2008, and his failure to complete courses at RCC impeded his chances for parole. He further alleges that his parole eligibility was impacted by his placement in security confinement. He also claims that he lost the opportunity to be screened for work-release programs at RCC which he intended to pursue in March of 2008.

Labat claims that defendants Williams, Kennedy, and Hillman acted willfully and maliciously to subject him to cruel and unusual punishment, committed theft of state assets, caused mental and physical abuse, and forged state documents. He claims that defendants Harrell, Miller, and Travis caused him to be placed in isolation under cruel and unusual conditions and transferred him to DWCC, which resulted in his prolonged incarceration, lost opportunity for parole, and lost opportunity to participate in work release and vo-tech training.

He further claims that the prison officials violated the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C.A. § 1961 ("RICO") because they engaged in a pattern of criminal activity on a constant and frequent basis.  As a result of the foregoing actions and events, Labat seeks relief under § 1983 from each of the defendants for past, present, and future psychological, physical, emotional, and economic damages, attorneys fees, costs, and general and equitable relief. He also seeks to recover punitive damages for the violation of his constitutional rights.

## II.    Pending Motion to Dismiss and for Summary Judgment

### A.    Defendants' Argument

In response to the allegations, the defendants filed the instant motion seeking dismissal of Labat's claims on several grounds.  The defendants argue that the claims against them in their official capacity should be dismissed for lack of jurisdiction presumably under the Eleventh Amendment.  The defendants also argue that Labat's state and federal claims against Hillman have prescribed, because the events occurred more than one year prior to the filing of this suit. Alternatively, they contend that Labat failed to exhaust the Administrative Remedy Procedure at the jail.

Furthermore, the defendants seek dismissal of the RICO claims, because Labat lacks standing.  This argument is based on the representation that Labat was not injured in his "business or property" as required by 18 U.S.C. §1364 (c).

Also, they seek dismissal of the remaining § 1983 claims, including denial of medical care, abusive language, and forced legal work assignments, against Hillman, Harrell and Travis under the doctrine of qualified immunity and otherwise for failure to state a constitutional violation. Specifically, the defendants argue that no law was established which would have prevented them

from assigning Labat to perform legal work for other inmates. In addition, the constitution does not protect an inmate from verbal abuse or threats or other condition of confinement which did not result in a physical injury. The defendants further argue that they were not aware of any danger to Labat prior to the alleged attack by another inmate. The defendants also argue that Labat did not alleged that he required medical care.

The defendants further request that the Court decline to exercise supplemental jurisdiction over any remaining and un-prescribed state claims, none of which are identified by the defendants.

**B.** **Plaintiff's Opposition**

In his opposition, Labat argues that the affidavit of Rhonda Z. Weldon submitted in support of defendants' motion is inadmissable since it is not based on personal knowledge. He further argues that the defendants have refused to participate in discovery and have failed to file a responsive pleading which renders the summary judgment unfair and premature.

Labat also concedes that he never intended to name the defendants in their official capacity such that the State of Louisiana would be accountable for their wrongful actions. Instead, he insists that his claims have been urged against the defendants individually and each should be held individually accountable.

He further argues that the motion for summary judgment on the issue of prescription is premature, because he needs to obtain documents through discovery. Specifically, he claims that the documents sought will establish that he filed a timely grievance complaint through the Administrative Remedy Procedure and that the grievance was never answered. He notes, however, that the defendants have failed and refused to answer propounded discovery under the guise that the discovery requests were premature. He argues that his time for filing this suit was and is suspended

pursuant to La. Rev. Stat. Ann. § 15:1172(E) pending an answer to that grievance. Because this was alleged in the complaint, it is inappropriate to dismiss the claim under Fed. R. Civ. P. 12(b)(6).

Labat also argues that he was prevented from proceeding to the second step since he never received an answer to the first step. He concedes that 22 La. Admin. Code pt. I § 325(G)(4)(a) allows an inmate to proceed when the response time for step one expires; however, he argues that this was not a requirement.

He further argues that the defendants are not entitled to qualified immunity to protect their criminal wrong-doings. He also suggests that the violation of state law prevents a state actor from claiming qualified immunity. Thus, accepting the allegations in the complaint as true, he argues that each defendant has violated state criminal laws and other statutory provisions which prevents the application of qualified immunity.

Labat also argues that, contrary to the State's argument, he pleaded in his complaint that he suffered damage, including physical injury and denial of food, which violated his constitutional rights and which entitles him to redress under § 1983. He further argues that he suffered injury as a direct result of the defendants' prohibited RICO activity. Finally, he objects to the defendants request to dismiss the remaining state law claims which they have failed to identify.

## III.    Standards of Review

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)[3]

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*,

---

[3]To the extent the Court's reasoning may extend beyond the arguments made in the defendants' motion, the Court notes that its decision is thereby made *sua sponte* as allowed under the similar standards of review set forth in 28 U.S.C. § 1915(e) and § 1997A, and 42 U.S.C. § 1997e.

75 F.3d 190, 196 (5th Cir. 1996). The United States Supreme Court has held that Fed. R. Civ. P.

8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court went on in *Ashcroft* to clarify:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557, 127 S.Ct. 1955.

*Id*. 129 S. Ct. at 1949 (quoting *Bell Atl. Corp*., 550 U.S. at 555).

Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative

level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful

in fact)." *Bell Atl. Corp.*, 550 U.S. at 555-56 (uppercase and parenthetical in original) (quotation

marks, citations, and footnote omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570;

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change

in the standard of review). Plausible grounds "simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp.*, 550 U.S. at

556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that

actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*.

(quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)). "But, where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' Fed. Rule Civ. Proc.

8(a)(2)." *Ashcroft*, 129 S. Ct. at 1950.

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

**B.      Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In

making this determination, all of the facts must be viewed in the light most favorable to the non-moving party.  *Id*. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie."  *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994).  While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial."  *Celotex Corp*, 477 U.S. at 324.  If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

### C.    Competent Summary Judgment Evidence

Labat suggests that the affidavit of Rhonda Z. Weldon is not competent summary judgment evidence to support the defendants' motion, since it does not state that it is based on her personal knowledge.  The affidavit is submitted for the purpose of demonstrating that the first grievance

Labat exhausted through both the first and second steps of the ARP process was RCC 2007-156.[4]

By implication, this would support the defendants' contention that Labat did not exhaust administrative remedies prior to that time.

Rule 56 of the Federal Rules of Civil Procedure sets out the standards for summary judgment and generally requires that supporting evidence be sworn, certified, or verified material for a court to consider it. *See Stingley v. Den-Mar Inc.*, 347 F. App'x 14 (5th Cir. 2009). Specifically, Rule 56(e) requires that summary judgment affidavits "shall be made on <u>personal knowledge</u>, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e) (emphasis added). It is well settled in the Fifth Circuit that "[s]tatements made on information and belief do not constitute proper summary judgment evidence." *De la O v. Housing Auth. of City of El Paso, Tex.*, 417 F.3d 495, 502 (5th Cir. 2005); *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003); *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994) (instructing that statements "based on information and belief . . . [are] struck as not based on personal knowledge and therefore fail[ ] the requirements of Fed. R. Civ. P. 56(e)").

The affidavit submitted in this case makes no reference to Weldon's personal knowledge.[5] Instead, the affidavit indicates that the contents are "true and correct to the best of her knowledge and belief." This is the same type of language previously rejected by the Fifth Circuit. For example, in *Bolen*, the Court struck an affidavit, which stated that it was based "on information and belief, and

---

[4]Rec. Doc. No. 42-6.

[5]Weldon does state that she reviewed the ARP records filed by Labat to draw the conclusions in the affidavit. Rec. Doc. No. 42-6, p. 1. This, however, does not appear to be a sufficient of personal knowledge under the Fifth Circuit precedent cited herein.

to the best of affiant's recollection," because the affidavit was not based on the affiant's personal knowledge. *Bolen*, 340 F.3d at 313; *see also Downey v. Strain*, No. 04-2593, 2005 WL 3541052, at *4 (E.D. La. Dec. 7, 2005) (refusing to consider an affidavit that "merely states that all of the allegations of fact in the memorandum are true to the best of her knowledge, information and belief."). The Court also notes that Weldon indicates only that she has "access" to the ARP records and does not indicate any custodial status of those records or other competence to attest to the validity or contents of those records.

For the foregoing reasons, the Court sustains Labat's objection to the affidavit, strikes the affidavit of Rhonda Z. Weldon, and declines to consider its contents in connection with the defendants' motion for summary judgment.

Nevertheless, the Court notes that other competent evidence and pleadings establish, and plaintiff concedes, that Labat exhausted the two steps of the administrative process on RCC 2007-156. Labat also concedes that his prior grievance, which he has not produced or identified by number, was not taken to the second step. He claims that he chose not to do so, because he did not receive a response to the first step. Thus, even without Weldon's affidavit, the uncontested facts are sufficient for the Court to consider the issues presented in the motion for summary judgment.

IV. **Analysis**

A. **Official Capacity Claims**

The defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) of the plaintiff's claims to the extent the plaintiff has sued them in their official capacity. The defendants, in seeking the dismissal, assume that the plaintiff sued the defendants in their individual and official capacities since he did not designate either capacity in the complaint.

In his opposition, Labat concedes that he did not identify the capacity in which the parties were sued. He claims that he did not have to because he did not intend to sue the defendants in their official capacity. He firmly states that he has only sued the defendants personally in their individual capacities.

Some federal courts have held that a § 1983 plaintiff must designate the capacity in which the defendant is being sued. *Hafer v. Melo*, 502 U.S. 21, 24 n.* (1991) (citing *Wells v. Brown*, 891 F.2d 591, 592); *see also Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir.1999) (If no designation is made, the defendant is deemed to be sued in his official capacity). In the Fifth Circuit, "the allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action." *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir.1973) (looking to complaint to determine nature of plaintiff's claim in § 1983 case). When the complaint is not clear whether the defendant is named in his individual or official capacity, the Court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued. *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2000) (finding course of proceedings indicated that defendant was sued solely in official capacity because plaintiff never challenged assertion made by defendant in motion to dismiss that defendant was sued in official capacity); *see also*, *Drabek v. Larson*, 7 F.3d 229 (5th Cir. 1993).

In this case, a review of the complaint reflects that Labat did not clearly indicate the capacity in which he named the defendants. He has now conceded in his subsequent pleading that he is <u>not</u> suing the defendants in their official capacity and that he never intended to do so. Based on Labat's concession and the pleadings in this case, the Court finds that the defendants are only named in their

individual capacities. The defendants' motion on this issue is therefore moot and this portion of the motion can be denied for that reason.

**B.**     <u>**Claims of Excessive Force, Denial of Medical Care and Improper Investigation Arising from the September 19, 2006, Incident**</u>

The defendants move for summary judgment under Fed. R. Civ. P. 56 on the following state and federal claims: excessive force against Sergeant Hillman; denial of medical care, follow-up medical care, and prescription medication against Sergeant Hillman, Major Harrell, and Chief Travis; and improper investigation by Major Harrell and Warden Miller. Labat alleges, *inter alia*, that he filed a grievance arising from the alleged Hillman beating, which included his claims of excessive force, denial of medical care, follow-up medical care, and prescription medication, and improper investigation, all of which occurred while he was housed in the Sun Unit.

The uncontested facts[6] establish that the alleged use of force against Labat by Sergeant Hillman occurred on September 19, 2006.[7] Labat further claims that he was denied medical care, follow-up medical care, and prescription medication by Hillman, Harrell and Travis during the 90 days he remained housed in the Sun Unit following the use of force by Hillman and continuing during Harrell's incomplete investigation of the use of force, which also occurred while he was in the Sun Unit. Labat's verified complaint confirms that he immediately reported the beating to Travis who in turn assigned the investigation of the incident to defendant Harrell.[8] According to the prison's records, Labat was transferred out of the Sun Unit on December 14, 2006; he claims in his

---

[6]Labat did not challenge the uncontested facts stated in the defendants' Statement of Uncontested Facts, most of which are also confirmed by Labat's own pleadings.

[7]Rec. Doc. No. 42-2, p.1, l.2; Rec. Doc. No. 42-4, p. 23.

[8]Rec. Doc. No. 1, p. 5.

complaint, however, to have been in that unit for 90 days. Assuming the allegations in his complaint to be true, the defendants acquiesce and address the claim as if he remained in that facility until December 19, 2006.[9] The defendants contend that the excessive force, denial of medical care, and improper investigation claims against Hillman, Harrell, and Travis have prescribed, because this lawsuit was not deemed filed until June 18, 2008.

Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[10] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action, similar to a Louisiana tort claim, accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief." *Id*. at 388 (citations omitted).

---

[9]Rec. Doc. No. 42-3, p. 5.

[10]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

Thus, for purposes of this lawsuit, Labat would have had one year from the date of injury or damage to bring both his § 1983 and state law claims against Hillman, Harrell, and Travis arising from the excessive force incident on September 19, 2006.

Nevertheless, in the prisoner litigation context, the prescriptive period can be tolled during an inmate's efforts to timely and properly exhaust administrative remedies and if the inmate is legally unable to act. *Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999); *see also*, *Wallace*, 549 U.S. at 388 (a plaintiff must be able to file suit to seek the relief requested). Labat alleges that he filed a timely grievance at RCC and he never received a response to it. He therefore suggests that it is still pending and the limitations period on his claims are perpetually tolled pursuant to La. Rev. Stat. Ann. § 15:1172(E) cited by the defendants.

Under Louisiana's Corrections Administrative Remedy Procedure, codified at La. Rev. Stat. Ann. § 15:1172(E), and 22 La. Admin. Code Part I, § 325, the inmate has 90 days from the incident to file a grievance letter with the Warden. Thereafter, the Warden of an institution has 40 days from the date of receipt to respond to an inmate's ARP request. If the inmate is dissatisfied, he may appeal to the DOC Secretary within five days of receiving the Warden's response. State law also requires the appeal to be resolved within 45 days, leaving a total of 90 days for completion of the entire grievance process.

As amended by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). A prisoner's available administrative remedies are exhausted when the time limits for the prison's

response set forth in the prison grievance procedures have expired. *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998); *see also Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). In *Underwood* and *Gates*, the Fifth Circuit considered cases that involved the failure of prison authorities to issue a timely response at the final step of the grievance procedure. Such a rule makes sense in that context, where federal court is the only remaining remedy available to a prisoner faced with a constructive denial at the final step of the administrative procedure.

However, where, as here, a timely response is not forthcoming at the first step of the procedure, the constructive denial or expiration of the first step response period requires the prisoner to proceed to the second step of the administrative procedure. *Hicks v. Tarrant County Tex.*, 349 F. App'x 869, 871 (5th Cir. 2009); *Hicks v. Garcia*, No. 09-11045, 2010 WL 1427376, at *1-2 (5th Cir. Apr. 9, 2010). Thus, accepting Labat's claims as true, if he filed a prior grievance procedure for which he received no first step response, at the expiration of the 40-day period for the Warden's reply, he was then able to proceed to the second step with the DOC Secretary. In other words, that second and final step then became <u>available</u> to him, and he simply chose not to pursue it. "Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules." *Rodriguez v. Johnson*, No. G-06-0768, 2008 WL 2403722, at *6 (S. D. Tex. June 10, 2008) (citing *Woodford v. Ngo*, 548 U.S. 81, 96-98 (2006)). His failure to pursue that second step at that time left his grievance unexhausted. *See Johnson v. Cheney*, 313 F. App'x 732, 733 (5th Cir. Mar. 11, 2009).

Affording Labat every benefit, he had 90 days from the September 19, 2006, beating and initial denial of medical care, or until December 18, 2006, to lodge a grievance with the RCC Warden against Hillman, Harrell, and Travis. This is so because Labat claims to have filed all of

his complaints, including those for denial of follow-up medical care and prescription medication, against Hillman, Harrell, and Travis in this same grievance before he left the Sun Unit. The Court will assume for his benefit that all of the claims were filed within the time allotted for filing in relation to the initial beating, otherwise the grievance would not have been timely.

Therefore, assuming that Labat met the December 18, 2006, deadline, the Warden had 40 days therefrom, or until Monday, January 29, 2007,[11] to respond to the grievance. Thus, when January 29, 2007, passed without a response, Labat had five days, or until Monday, February 5, 2007,[12] to pursue the second step of review, which he did not do. As a result, the Court must find that Labat was properly pursuing review of his alleged grievance complaint through February 5, 2007, when the time for filing the second step appeal expired, and under the cases cited above, his grievance was rendered unexhausted.

Under the most liberal of readings, the prescriptive period would have been tolled from the date of the beating, September 19, 2006, through February 5, 2007. Applying all of the foregoing standards, Labat would have had until February 6, 2008,[13] to file his § 1983 and state law claims against Hillman, Harrell, Travis, and Miller arising from the excessive force, medical indifference, and improper investigation arising from the September 19, 2006, incident.

The clerk of this court filed Labat's complaint on July 30, 2008, when his pauper application was granted.[14] In the prisoner context, however, the date prison officials receive the complaint from

---

[11]The fortieth day fell on Saturday, January 27, 2007, so the Court has granted until the next business day.

[12]The fifth day fell on Saturday, February 3, 2007, so the Court has granted until the next business day.

[13]The one-year period ran on February 5, 2008, which was Mardi Gras Day, a legal holiday for this Court and in Louisiana.

[14]Rec. Doc. Nos. 1, 3.

the plaintiff for mailing to the court is the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995). Labat signed the affidavit attached to his complaint on June 18, 2008, which is presumed to be the earliest date on which he could have given the pleadings to prison officials for mailing to the Court.

Therefore, Labat's complaint, deemed filed on June 18, 2008, was filed over four months after the limitations period expired on February 6, 2008. The defendants' motion for summary judgment should be granted and Labat's federal and state claims of excessive force, denial of medical care, denial of follow-up medical care and prescription medication, and improper investigation against Hillman, Harrell, Travis, and Miller arising from the September 19, 2006, incident, should be dismissed as prescribed.

Alternatively, should a reviewing Court find that these claims are not prescribed or that a genuine issue of fact exists as to prescription, the motion can still be granted. Labat's claims of excessive force, medical indifference, and improper investigation, addressed in the unidentified common grievance complaint, are unexhausted, as he concedes. As outlined above, Labat failed to pursue the second step of the grievance process upon expiration of the 40-day period for the Warden to respond. This renders the claims raised in that grievance to be unexhausted. *Hicks v. Tarrant County Tex.*, 349 F. App'x at 871; *Hicks v. Garcia*, 2010 WL 1427376, at *1-2; *Johnson*, 313 F. App'x at 733.

## C.    Remaining § 1983 Claims

The defendants next move for the dismissal under Fed. R. Civ. P. 12(b)(6) of Labat's § 1983 claims because they fail to allege a constitutional violation and otherwise because they are entitled

to qualified immunity. The defendants further contend that Labat does not allege that he suffered any physical injury which would entitle him to relief under § 1983.

Labat also alleges that, after he was moved to the Wind Unit, he was forced, under threat of returning him to Sun Unit, by defendants Williams and Kennedy to perform legal work for other select inmates, RCC employees and employees of other state agencies. In performing this duty, he claims that he was often locked in an office and denied meals and other unspecified personal needs. He further alleges that Williams and Kennedy also failed to protect him from the attack by Alfred Stewart, another inmate who beat him because he spent too much time in the inmate law library. As a result of this event, he alleges that these defendants and Warden Miller also denied him proper medical treatment for the injuries he sustained at the hands of Stewart.

Labat claims that he was placed in isolation after reporting these events to Warden Miller. While there, he endured a loss of privileges normally imposed on problem inmates for disciplinary reasons, such as limited shower access, no communication with family, loss of recreation time, no access to legal materials, and no access to personal hygiene items. He also alleges that he continued to endure verbal abuse and threats from defendants Hillman, Kennedy, and Williams until August 20, 2007, when he was transferred.[15] Some of the threats were related to his knowledge that Kennedy and Williams were holding and distributing supplies and other items belonging to the prison for certain inmates to sell within the jail.

He also claims that the transfer to DWCC caused him to lose educational credits and opportunities, including work-release eligibility, and also affected the timing of his parole eligibility.

_____

[15]Rec. Doc. No. 1, p.12, ¶80.

This was in part a result of his prison records showing that he had been placed in maximum security which implies disciplinary problems and affected his placement in DWCC.

### 1.    Conditions of Confinement Claims under § 1983

"Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).  Like other Eighth Amendment claims, a conditions of confinement claim must satisfy tests for both objective and subjective components. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *accord Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Downey v. Denton County*, 119 F.3d 381, 385-86 (5th Cir. 1997).  To succeed on a claim of unconstitutional conditions of confinement, this Court "must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303).  If the Court finds that either the subjective or objective component of the test is not met, it need not address the other component. *Davis*, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in *Wilson* noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347).  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. *Wilson*, 501 U.S. at 303. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (other citations omitted) (emphasis added).

a. <u>**Verbal Threats and Harassment**</u>

Labat claims that he suffered verbal threats and harassment at the hands of several of the defendants until his transfer on August 20, 2007. To the extent any of these incidents have not prescribed, he has failed to state a constitutional violation.

The Fifth Circuit has long held that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" *Robertson v. Plano City*, 70 F.3d

21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *accord Burnette v. Phelps*, 621 F. Supp. 1157, 1162 (M.D. La. 1985); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973), *abrogated in part on other grounds by Graham v. Connor*, 490 U.S. 386, 397 (1989) (the use of language, no matter how violent, does not constitute a § 1983 violation); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under § 1983); *Baird v. Perez*, No. 98-3762, 1999 WL 386746, at *2 n.3 (S.D.N.Y. June 10, 1999) ("verbal harassment, abuse and even vile language by arresting officers 'do not constitute a violation of any federally protected right'") (quoting *Bowles v. State*, 37 F. Supp. 2d 608, 613 (S.D.N.Y. 1999)).

In addition, "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Slagel v. Shell Oil Reference.*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) (citations omitted). Thus, Labat's endurance of verbal abuse and threats does not rise to the level of a constitutional violation. The defendants' motion to dismiss should be granted on this issue.

### b.    Forced to Perform Legal Work

Labat alleges that his rights were violated by Kennedy and Williams when they forced him to perform legal work for other inmates and for state employees, including personal matters unrelated to the prison. As discussed in the next portion of this opinion, the conditions under which he performed this legal work did not amount to a deprivation sufficient to state a violation of the

Eighth Amendment's prohibition to cruel and unusual punishment. *See Washington v. Janice*, Nos. 1:07-0513/1:07-0629, 2009 WL 5064117, at *12 (S.D. W. Va. Dec. 16, 2009) (conditions under which a prisoner performs his work duty assignment is considered under the Eighth Amendment).

Nevertheless, the main contention set forth by Labat is that the assignment itself violated his constitutional rights by forcing him to do work he should not have been doing and which the prison records did not assign him to do. The Thirteenth Amendment provides in pertinent part that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction." U.S. Const. Amend. 13.

Cases interpreting the Thirteenth Amendment have held that "when a person is duly tried, convicted and sentenced in accordance with the law, no issue of peonage or involuntary servitude arise." *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001) (quoting *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963), *cert. denied*, 375 U.S. 915 (1963)). Derived from this, the United States Fifth Circuit has long-held that forcing a prisoner to work on private property does not render his labor involuntary servitude or violative of the Constitution. *Williams v. Henagan*, 595 F.3d 610 (5th Cir. 2010) (citing *Murray v. Miss. Dep't of Corr.*, 911 F.2d 1167 (5th Cir. 1990)).

In *Murray*, the Fifth Circuit "decline[d] to create a private-property exception to our prior holdings that an inmate may be compelled to work without pay." *Murray*, 911 F.2d at 1167. The Court resolved that there was "no basis from which to conclude that working an inmate on private property is any more violative of constitutional or civil rights than working inmates on public property." *Id*. at 1168. In reaching this conclusion, the *Murray* court held that, under the Thirteenth Amendment, an inmate may be compelled to work without pay even where state law may prohibit

an inmate from working on private property. *See also Williams v. City of DeQuincy*, No. 04-cv-612, 2006 WL 3747449, *2 (W.D. La. 2006) (Report and Recommendation) (no viable Thirteenth Amendment claim where inmate forced to work on private property rather than public property).

Relying on *Murray*, the Fifth Circuit recently reiterated its resolve that a Louisiana inmate can be assigned to work on local officials' personal business and private property without violating the Constitution. In *Williams v. Henagan*, cited above, the plaintiff/inmate complained of his work assignments while housed in the C. Paul Phelps Correctional Center and the DeQuincy City Jail. *Williams*, 595 F.3d at 613-14. Williams alleged that he was the only inmate assigned to duties which included maintaining city property and facilities, such as City Hall, a railroad museum, ball parks, and the police station. He further alleged that the mayor and police chief of DeQuincy forced him to work additional hours beyond the regular work week, and sometimes for their private gain. This included waxing the floors at the police chief's church, working 20 hours a day during the city's railroad festival, and cooking barbecued chicken for over 26 hours at various local fundraisers. He also alleged that, twice a month, he was required to ride around the city with the police chief between 2 a.m. and 3 a.m. to count burned out street lights. The police chief also took him to Texas once to transport furniture that had been given to him. The mayor also required Williams to work off-hours, at night and on weekends, for his private businesses, including his space jump rental and grass cutting businesses.

The *Williams* court, quoting *Murray*, simply held that Williams's being forced to work on private property and for the defendants' private businesses did not render his labor to be involuntary servitude in violation of the Thirteenth Amendment. *Williams*, 595 F.3d at 622 (citing *Murray*, 911 F.2d at 1167-68).

In this case, Labat alleges that he was assigned to perform legal work for the private benefit of certain inmates and state employees. Assuming this to be true, Labat's labors enured to the private benefit of these other individuals. Although his duties were in the nature of legal services, not manual labor, the scenario is analogous to that addressed in *Williams* and *Murray*. The Court can not find that this precedent would distinguish between the nature of the work done. The law is clear that a convicted inmate can be assigned to do private works without violating the Constitution, even if state law would otherwise prohibit such an assignment, something Labat also has not established here.

For the foregoing reasons, there is no constitutional violation arising from an inmate's assignment to perform work on private property or work which enures to the private benefit of another. Labat has failed to state a claim for which relief can be granted. The defendants' motion to dismiss on this issue should be granted.

c.    **General Conditions, Specifically Some Missed Meals, Denial of Other Personal Needs, and Loss of Privileges While in Isolation**

Labat claims that he missed occasional meals and was denied other personal needs while he was locked in an office to perform legal work. He also alleges that, during his later time in isolation, he endured restricted access to showers, recreation, personal hygiene items, legal materials, and visitation.

While the Constitution requires prisons to provide inmates with basic human needs, an inmate is not entitled to every amenity while in jail. Prisons are not meant to be comfortable. *Wilson*, 501 U.S. at 294; *Rhodes*, 452 U.S. at 337. Labat has not alleged that the conditions addressed in this section of the Report caused him anymore than discomfort and inconvenience.

As such, as an initial consideration under 42 U.S.C. § 1997e, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)). Thus, to the extent Labat seeks monetary damages for his brief or occasional exposure to less than comfortable conditions, he fails to state a claim for which relief may be granted because he has alleged no harm or injury resulting from these complained of conditions. His discomfort is not sufficient to warrant redress and he has not alleged any physical injury resulting from the restrictions placed on his activities at the prison or arising from an occasional missed meal. *See Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir. 2001) (holding that a plaintiff was not entitled to money damages as a matter of law on his claim for mental and emotional stress due to an increased risk of illness, cold showers, cold food, unsanitary dishes, insect problems, inadequate clothing, and the presence of an open cesspool near the housing unit because he did not allege any physical injuries resulting therefrom); *Harper*, 174 F.3d at 719 (finding that a prisoner complaining about his placement in administrative segregation failed to demonstrate a physical injury as required by § 1997e(e) sufficient to support a claim for monetary damages); *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630-31 (5th Cir. 2003), *cert. denied*, 541 U.S. 1012 (2004) (nausea and vomiting caused by raw sewage on floor of jail cell was *de minimis*).

Furthermore, the Court notes that even if Labat could identify some physical effect from the foregoing conditions, he fails to state a claim sufficient to warrant redress under § 1983. The Constitution is not violated when an inmate occasionally misses one or even several meals. *See*

*Bellamy v. Bradley*, 729 F.2d 416, 419-20 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984) (missing meals for a day not a constitutional violation); *Veteto v. Miller*, 829 F. Supp. 1486, 1495-96 (M.D. Pa. 1992) (dismissing allegations of missed meals during brief period without allegations of going hungry); *Morrison v. Martin*, 755 F. Supp. 683, 686 (E.D.N.C. 1990), *aff'd*, 917 F.2d 1302 (4th Cir. 1990) (dismissing generalized allegations of missed meals); *Moss v. Ward*, 450 F. Supp. 591, 596, 598 n.8 (W.D.N.Y. 1978) (deprivation of one meal or a day's meals not cognizable); *Herring v. Superintendent, Danville City Jail*, 387 F. Supp. 410, 412 (W.D. Va. 1974) (missing breakfast not a constitutional issue).

Similarly, Labat has not alleged deprivations leading to such egregious conditions as those prohibited in *Rhodes* and its progeny in the occasional restriction on access to personal hygiene items, unspecified in this case, or to limited shower access. *See Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

Further, inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (Table, Text in Westlaw) (citing *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982)); *see also Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (affirming limits on recreation time). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821, at *1 (citation omitted).

To succeed on a claim for lack of exercise, plaintiff must provide facts that "support the existence of any health hazard under the specific circumstances involved." *Ruiz v. Estelle*, 679 F.2d

1115, 1152 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982). As noted above, Labat has not alleged or even implied that the conditions of his confinement in Wind Unit or in isolation had a physical impact on his health.

Labat also claims that he had limited access to legal materials while in isolation. In order for Labat to state a violation of his constitutional right to meaningful access to the courts, he must allege that he has suffered some actual legal prejudice or detriment caused by the challenged conduct. *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (citing *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992)). The inmate must demonstrate that the acts of the prison officials prevented his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351. In this case, Labat makes no such allegation in his complaint or showing in response to the defendants' motion.

Finally, Labat also claims that his visitation with family was restricted while he was in isolation. As a general rule under federal law, the Due Process Clause does not create a right to unrestricted visitation for persons held in detention. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989). Restrictive visitation procedures are within the scope of prison security, and as such are subject to the broad discretion afforded prison officials in running their jails. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999). Visitation privileges, therefore, are subject to the discretion of correctional personnel and may be limited or even revoked in the furtherance of legitimate penological objectives. *Berry*, 192 F.3d at 508; *Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) ("[P]risoners have no absolute

constitutional right of visitation."); *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975) ("Visitation privileges are a matter subject to the discretion of prison officials.").

For the foregoing reasons, Labat has failed to state a cognizable claim against the defendants under § 1983 arising from the conditions of his confinement, specifically missed meals, denial of other personal needs, and loss of privileges while in isolation.

### d.    Failure to Protect Him from Attack by Stewart

Labat complains that he was attacked by another inmate, Alfred Stewart. He alleges that Stewart attacked him, because he was upset that Labat spent too much time doing legal research which prevented other inmates from using library time. This, Labat claims, was a direct result of the improper legal-work assignments ordered by Kennedy and Williams.

To prevail on a § 1983 failure to protect claim in violation of the Eighth Amendment, a prisoner must demonstrate that "'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). The deliberate indifference standard in a failure to protect claim requires proof that the official actually knew of a substantial risk of serious harm and failed to act. *Farmer*, 511 U.S. at 832-34, 837. This standard also requires a showing that the prison official actually drew an inference that such potential for harm existed.

The Court is aware that Labat claims that the defendants created the danger which led to the attack by Stewart, a non-state actor. The Supreme Court has held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189,

197 (1989); *see also McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002). The Supreme Court of course also acknowledged that, under the Eighth Amendment, the incident of incarceration imposes on the state a constitutional duty to protect that individual from known dangers, including, in some circumstances, private violence. *DeShaney*, 489 U.S. at 200.

In *McClendon*, the Fifth Circuit recognized that some circuits read this portion of the *DeShaney* opinion to suggest that a state could be liable for private violence if it created or exacerbated the danger. *McClendon*, 305 F.3d at 324. The Fifth Circuit has, however, made clear that it declines to adopt the state-created danger theory of liability. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010).

In doing so, the Fifth Circuit acknowledges that the state-created danger theory applies only when the state has "actual knowledge of a specific risk of harm to a known victim." *Morin v. Moore*, 309 F.3d 316, 322 (5th Cir. 2002); *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 424 (5th Cir. 2006). That is not the case here.

Labat has not alleged that the defendants targeted him for the attack by Stewart or that they had actual knowledge that Stewart would attack him. *See Luevano v. Geyer*, 355 F. App'x 834, 836, 2009 WL 4798142, at *2 (5th Cir. Dec. 14, 2009). Under Fifth Circuit precedent, this theory must be rejected; his claim therefore falls under the Eighth Amendment. *Longoria v. Texas*, 473 F.3d 586, 592 n.8 (5th Cir. 2006).

Having established that Labat's claim must be addressed under the Eighth Amendment, he has failed to state a claim for failure to protect arising from Stewart's attack. A thorough reading of Labat's claims reflects that he claims that he was "frequently threaten [sic] by other inmates"

because of the time he usurped in the law library.[16] He claims that ultimately, he was attacked by Stewart.

At no time does Labat allege that he made the defendants aware that he had been threatened or that the defendants should have known that he was being threatened because of his library use. He does not allege that he requested protection from Stewart or any other threatening-inmate. Without some allegation that the defendants knew of the risk and drew the inference of a danger from Stewart, Labat fails to state a claim for which relief can be granted. The defendants' motion to dismiss should be granted on this issue.

### e. Denial of Medical Care

Labat claims that he was denied medical care by defendant Williams after the attack by Stewart. Inadequate medical care by a prison doctor can result in a violation of the Eighth Amendment for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's serious medical needs which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Estelle*, 429 U.S. at 104); *Harris*, 198 F.3d at 153.

In *Estelle*, the United States Supreme Court concluded that:

[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

---

[16]Rec. Doc. No. 1, p.11, ¶70-71.

*Estelle*, 429 U.S. at 97 (citation omitted, footnotes omitted). Thus, to state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 533 (quoting *Farmer*, 511 U.S. at 837).

Thus, under this "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards and excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Farmer*, 511 U.S. at 837). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

As noted by the defendants, a thorough reading of Labat's complaint fails to indicate that he received any injury in the attack by Stewart. Labat alleges that he was "viciously attacked" by Stewart and that he was "denied any proper medical treatment for the injuries" from the "beating."[17] Labat does not describe, as he did with the Hillman beating, any of the alleged injuries nor does he specifically allege that he requested medical care for those injuries.

In his opposition to the current motion, Labat again fails to identify any specific injury caused by Stewart which would have required medical attention under *Estelle* and its progeny.

---

[17]Rec. Doc. No. 1, p.11, ¶¶ 71, 74, 75.

Instead, he references only the allegations in the complaint about the physical injuries he received at the hands of Hillman.[18]

Labat has, therefore, failed to make any showing that he suffered more than a *de minimis* injury during the attack by Stewart or that Williams or any other defendant knew he needed medical care and actively prevented him from obtaining medical attention. Labat's otherwise conclusory allegation that Williams needed to cover up the beating and denied him medical care is not sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002) (under the Rule 12(b)(6) standard, the Court will not accept as true conclusory allegations or unwarranted deductions of fact); *see also*, *Lowrey*, 117 F.3d at 246 (conclusory allegations will not suffice to state a claim); *see also Knox v. Wainscott*, No. 03-C-1429, 2003 WL 21148973, at *9 (N.D. Ill. May 14, 2003) ("However, the plaintiff has no separate cause of action against the defendant Lang for falsifying an injury report. Lang may have engaged in professional misconduct if she fabricated documents to cover up wrongdoing committed by her fellow officers. Nevertheless, her actions did not violate any constitutional right.").

### f. Concealment of the Stewart Attack, Falsification of Prison Records, Failure to Adequately Investigate Wrong-doings

Labat claims that throughout his incarceration at RCC, including after the attack by Stewart, the defendants manipulated prison records to cover-up his work assignments and also failed to properly investigate their wrong-doings. Labat has failed to state a claim for which relief can be granted under § 1983.

First, there is no constitutional right for inmates to have incidents investigated in the manner that they desire. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005) (no right for prisoners

---

[18]Rec. Doc. No. 43, p. 14.

to have complaints resolved to their satisfaction); *accord Edmond v. Martin*, 100 F.3d 952, 1996 WL 625331 (5th Cir . Oct. 2, 1996) (Table, Text in Westlaw) (claim that a defendant failed to investigate and denied a prisoner's grievance raises no constitutional issue); *Thomas v. Lensing*, 31 F. App'x 153, 2001 WL 1747900, at *1 (5th Cir. Dec. 11, 2001) (same). This portion of his claim does not invoke constitutional protection.

With respect to his claim that prison records were falsified, his claim also fails under Fed. R. Civ. P. 12(b)(6). To obtain relief under the § 1983, a person must establish that a state actor deprived him of a right secured by the Constitution or laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). In this case, even if the defendants falsified prison records to cover up their alleged wrongdoings, Labat has not shown that this is a violation of a right secured by the Constitution or laws of the United States. *See*, *e.g.*, *Knox*, 2003 WL 21148973, at *9 (no § 1983 claim against a nurse who allegedly falsified injury report; even if the nurse engaged in professional misconduct, no constitutional violation was shown). Similarly, if the wrongdoings, including the attack by Stewart, were "covered up," this could be a violation of prison regulations or even state law, but there is no showing that it is a violation of any right protected by the Constitution or laws of the United States. *Cf. Baker v. McCollan*, 443 U.S. 137, 146 (1979) (noting that many claims which may be actionable as violations of state tort law do not amount to constitutional violations); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Thus, even if Labat contends that the defendants acted in concert to hide their alleged wrongdoings, "[i]t remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Gillum v. City of*

*Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (quoting *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984)).

For these reasons, Labat has failed to state a claim for which relief can be granted on this aspect of his claim. The defendants' motion to dismiss should be granted.

### g. Placement within the Prison and Resulting Loss of Privileges

Labat complains that the defendants improperly placed him in isolation after he reported his assignment to perform legal work, and this adversely effected the conditions of his confinement. "Classification of prisoners is a matter left to the discretion of prison officials" because "prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (internal quotations and citation omitted). Thus, decisions regarding the placement of prisoners and whether to transfer a prisoner are left to the discretion of prison officials and are not subject to judicial oversight, as long as the conditions of his confinement are within the terms of his sentence and do not otherwise violate the Constitution. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989) (citing *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)); *see also Shaw v. Murphy*, 532 U.S. 223, 228 (2001) ("Traditionally, federal courts did not intervene in the internal affairs of prisons and instead 'adopted a broad hands-off attitude toward problems of prison administration.'") (quoting *Procunier v. Martinez*, 416 U.S. 396, 404 (1974))).

It is, therefore, well settled that a prisoner does not have a constitutional right to be placed in a particular part of the prison or to receive a certain custodial classification while incarcerated. *Meachum v. Fano*, 427 U.S. 215 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (a prison inmate does not have a protectable liberty interest in his custodial classification); *see also*

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Labat's placement in isolation was not an "atypical and significant hardship," which would give rise to a protected liberty interest. *Id.* The Fifth Circuit applying *Sandin* has held that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995)); *Collins v. Collins*, 77 F.3d 474 (5th Cir. 1995).

Furthermore, the protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" which are adverse to a prisoner. *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997). The conditions of Labat's confinement in isolation, including the alleged denial of privileges addressed above in this Report, do not establish any violation of his constitutional rights. "The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin*, 515 U.S. at 478; *Madison*, 104 F.3d at 767-768; *accord Hernandez*, 522 F.3d at 563; *Dixon v. Hastings*, 117 F. App'x 371, 2005 WL 17382, at *1 (5th Cir. 2005); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000).

In the instant case, Labat alleges that the prison officials provided him with no reason or process in placing him in isolation after he reported the misconduct of Kennedy and Williams. However, *Sandin* makes clear that no particular process is required, unless something more than a mere change in condition of confinement occurs. *Madison*, 104 F.3d at 768. Labat alleges that his stay in isolation deprived him only of certain limited prison privileges, including showers, recreation, and visitation. The Court has already resolved that the loss of privileges did not violate the Eighth Amendment. Labat also has not alleged any "atypical, significant deprivation" that might rise to the level of constitutional concerns. *Dixon*, 2005 WL 17382, at * 1 (loss of commissary privileges, placement in administrative segregation, and extended work schedule were not atypical conditions requiring due process protections); *see Ellis v. Crowe*, No. 09-3061, 2010 WL 724158, at *6 (E.D. La. Feb. 19, 2010) (Africk, J.) (Order adopting Report and Recommendation).

To the extent Labat claims that his placement in isolation led to issues with his later placement in DWCC, for the reasons previously assigned, Labat has no constitutionally protected interest in his classification or placement in any prison. This would not itself constitute an atypical or significant hardship. Thus, under *Sandin*, even if Labat's transfer to isolation was a transfer to a disciplinary segregation area for punitive purposes as he implies, it did not violate a protected liberty interest because the transfer did not impose "atypical and significant hardship[s]" when compared to "the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because Labat has failed to show that he was deprived of a constitutional right in isolation, the defendants motion to dismiss should be granted.

### 2.     Alleged Criminal Activity by Kennedy and Williams

Labat claims that defendants Kennedy and Williams engaged in criminal activity by stockpiling state-owned supplies and selling them as contraband through select inmates in the prison, and that they, with the other defendants, destroyed evidence and covered-up their wrongdoings at the jail.  He alleges that this constitutes criminal behavior.  Even if these acts were criminal, Labat fails to allege how this entitles him to redress under § 1983.

First, it is well settled that private citizens do not have a constitutional right to have an individual criminally prosecuted.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Joseph v. Lewis*, 95 F.3d 54, 1996 WL 460071 (5th Cir. Jul. 30, 1996) (Table, Text in Westlaw); *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  Furthermore, as discussed above, in order to recover under § 1983, Labat must establish that the acts by the defendants violated <u>his</u> constitutional rights; the fact that he believes the actions to be criminal or against the public interest is not sufficient to establish a constitutional wrong for which he is entitled to personal redress under § 1983.  The defendants' motion to dismiss this claim should be granted.

### 3.     Transfer to DWCC

Labat claims that he suffered losses as a result of his transfer to DWCC, including inability to continue education and vocational opportunities and delay in pursuing parole opportunities.  As mentioned above, he also complains that he was placed in administrative segregation when he arrived there because of his prior stay in isolation at RCC.  These claims also fail to state a claim for which relief can be granted.

As discussed previously, it is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum*, 427 U.S. at 225. Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000). In Louisiana, the state has not created a liberty interest for an inmate to be in a particular prison.[19] Labat therefore has no basis to assert a § 1983 claims because he was transferred to DWCC.

Furthermore, he has failed to state a basis for relief under § 1983 because his access to a parole hearing was allegedly delayed. He has not alleged or shown that the transfer affected his parole eligibility, but rather that the transfer caused a delay in his ability to contact the parole board. Convicted persons have no constitutional right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Labat had no protected interest in obtaining parole or in pursuing information about his potential for parole. Without something more, Labat has failed to state a basis of a right protected under § 1983 arising from the delay he alleges to have suffered.

Furthermore, it is well settled that there is no constitutional right to educational, rehabilitative, or vocational services or programs in prison. *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th

---

[19]Pursuant to La. Rev. Stat. Ann. § 15:824, the Director of Corrections is authorized to decide which penal institution an inmate should be delivered or transferred. The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dep't of Corr. Sec'y*, No. 95-4215, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (Sear, J.) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B) (2010); *State v. Sylvester*, 648 So. 2d 31, 33 (La. Ct. App. 1994).

Cir. 1988); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-0098, 2010 WL 890980, at *10 (E.D. La. Mar. 8, 2010); *Morrison v. Gusman*, No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); *Oatis v. St. Tammany Parish Sheriff's Office*, No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); *Oglesby v. Gusman*, No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); *Sampson v. Corr. Corp. of Am.*, No. 08-CV-0915, 2009 WL 837640, at * 16 (W.D. La. Mar. 26, 2009); *Wilbon v. Gusman*, No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006). The lack of such programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. *See Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986).

As such, there is no due process violation when access to prison educational programs is lost. *See Salter v. Valdez*, No. 08-CV-0126, 2008 WL 4821316, at *3 (N.D. Tex. Nov. 5, 2008) (citing *Brown v. Cockrell*, No. 01-CV-1090, 2002 WL 638584, at *3 (N.D. Tex. Apr.17, 2002) (Order adopting Report and Recommendation) and *Turner v. Staples*, No. H-06-0293, 2006 WL 237045, at *3 (S.D. Tex. Jan.31, 2006).

In *Meachum*, 427 U.S. at 225, the Supreme Court found that the transfer of a prisoner from one institution to another was not protected by "the Due Process Clause in and of itself," even though the change of facilities involved a significant modification in conditions of confinement, later characterized by the Court as a "grievous loss." *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Later, in *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court also recognized that an inmate's transfer to another facility did not in itself implicate a liberty interest, even though that transfer resulted in the loss of "access to vocational, educational, recreational, and rehabilitative programs." *Hewitt*, 459 U.S. at 467 n. 4, 468. Since that time, the federal courts have resolved that where there

is a deprivation of an educational opportunity that is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and will not clearly impinge on the duration of confinement, an inmate has no federally-protected right to any sort of due process in connection with the lost opportunity. *See Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (quoting *Sandin*, 515 U.S. at 472).

Thus, Labat cannot assert a due process violation arising from his transfer to a facility which caused him to lose access to educational and vocational opportunities, or that may have caused delay in his ability to approach the parole board. In addition, under a Fourteenth Amendment equal protection analysis, Labat fails to allege that he was treated differently from similarly situated prisoners or that the defendants interfered with a fundamental constitutional right when he was transferred to DWCC. *See Hatten v. Rains*, 854 F.2d 687, 690 (5th Cir. 1988); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

For the foregoing reasons, Labat has failed to state a claim under § 1983 for which relief can be granted arising from his transfer to DWCC. The defendants' motion to dismiss should be granted on this issue.

###  D.     Claims urged under RICO

Labat alleges that the defendants' actions, specifically the concealment and distribution by sale of state-owned supplies to the prison inmate population and the alleged conspiracy to cover-up their other wrong-doings, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq*., which prohibits certain conduct that involves "'a pattern of racketeering activity.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (quoting 18 U.S.C. § 1962). "All RICO violations under . . . § 1962 entail '(1) a person who engages in (2) a

pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir. 2002) (quoting *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995)) (emphasis omitted).

RICO provides a remedy for these wrongs to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c) (2006). Thus, to have standing to sue, a plaintiff must allege that (1) he has suffered injury to business or property, and (2) the injury was caused by the defendant's conduct constituting a violation. *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 265-66 (1992); *Petty v. Merck & Co.*, 285 F. App'x 182, 2008 WL 2884520, at *1 (5th Cir. July 28, 2008) (citing *Price v. Pinnacle Brands*, 138 F.3d 602, 606 (5th Cir. 1998)), *cert. denied*, 129 S. Ct. 1010 (2009); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1214-15 (5th Cir. 1988). Furthermore, since there is no recovery under RICO for personal injuries, a plaintiff does not have standing to sue under 18 U.S.C. § 1964(c) based on such injuries. *See Price*, 138 F.3d at 607 n.20.

Assuming Labat's allegations are true, and the defendants' actions are encompassed by RICO, Labat must demonstrate that he has standing to bring the RICO claims. *See id.* at 606. In this case, Labat claims that he suffered a potential loss of revenue because he was not able to complete his education and vocational opportunities in jail so that he could later earn money through the work-release program.

Labat's allegations, if true, do not establish that he was a "'person injured in his business or property by reason of a violation' of [RICO]" as required under § 1964(c). *Anza*, 547 U.S. at 453. At best, he claims that he may have lost some earning potential if he could have been placed in a

work-release program and if he had completed the necessary training.  This is tenuous at best and is not adequate to establish that he actually suffered a financial injury to an existing business enterprise or property directly related to an illegal act by the defendants.

Labat has failed to meet the standing requirements to pursue a RICO claim against the defendants.  The defendants' motion to dismiss should be granted on this issue.

### E.    Remaining State Law Claims

Labat has also presented general claims of wrongdoing under state law.  The complaint attempts to set forth state law claims alleging that Kennedy and Williams are liable under Louisiana law for threatening him and for assisting other state employees in using inmate labor for their own personal benefit and gain.[20]  Labat further alleges that Williams, Kennedy, Harrell, Travis, and Miller attempted to conceal the wrongdoings and then took active steps to destroy evidence in violation of state law.[21]

Labat has failed to identify any specific state law violated by the foregoing alleged actions. Under a broad reading, however, it appears that he urges claims of malfeasance in office, negligence, and perhaps assault or intentional infliction of emotional distress.  To the extent these state law claims arose within the year prior to the filing of the instant complaint, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over these claims.

The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord*

---

[20]*See*, *e.g.*, Rec. Doc. No. 1, p.20, ¶123, 137.

[21]*Id.*, ¶125, 140, 151, 157, and 171.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). The Court is recommending that Labat's federal claims under § 1983 and RICO be dismissed in their entirety. Therefore, his state law claims should be dismissed without prejudice as the Court declines to exercise its supplemental jurisdiction.

## V.     Recommendation

It is therefore **RECOMMENDED** that the defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Rec. Doc. No. 42)** be **DENIED in part** as moot, to the extent it seeks dismissal of claims against the defendants in their official capacities, since no such claims were raised.

It is further **RECOMMENDED** that the remainder of the defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Rec. Doc. No. 42)** be **GRANTED in part**, and that the Court enter an Order to:

(1)     **DISMISS WITH PREJUDICE** the following claims for failure to state a claim for which relief can be granted:
(A) Labat's remainining § 1983 claims against the defendants Hillman, Harrell, Miller, Williams, Kennedy, and Travis (i) challenging the conditions of his confinement, specifically verbal threats and harassment, forced performance of legal work, general conditions including missed meals, denial of other personal needs, and loss of privileges while in isolation, failure to protect him from attack by Stewart, denial of medical care after the attack by Stewart, concealment of the Stewart attack, falsification of prison records, inadequate investigation, and improper placement within the prison with loss of privileges; (ii) challenging the alleged criminal activity by Kennedy and Williams; and (iii) challenging his transfer to DWCC; and
(B) Labat's claims urged against the defendants Hillman, Harrell, Miller, Williams, Kennedy, and Travis under RICO; and

(2)     **DISMISS WITHOUT PREJUDICE** Labat's remaining state law claims against the defendants Hillman, Harrell, Miller, Williams, Kennedy, and Travis, because this Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367.

It is further **RECOMMENDED** that the defendants' **Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Rec. Doc. No. 42)** be **GRANTED** and that Labat's state and federal claims against the defendants of excessive force, denial of medical care, and improper investigation, all arising from the September 19, 2006 incident, be **DISMISSED WITH PREJUDICE**, because these claims have prescribed.

New Orleans, Louisiana, this 8th day of July, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**